Sharp *v.* Todd.

---

## JOHN W. SHARP

*v.*

## WILLIAM P. TODD et al.

A mortgagor paid the interest due and then offered to his mortgagee bank checks for the amount of the principal due on the mortgage, which the mortgagee refused because the mortgagor had only the bank checks. Two days afterwards the mortgagor returned with two witnesses, with the amount of the mortgage in gold and legal tender currency, and attempted to enter the mortgagee's house, saying "I've got the money to pay off those mortgages, and I want those mortgages," whereupon the mortgagee thrust him out and locked the door. The mortgagor then deposited the money in a bank, where it re-

Sharp v. Todd.

mained until he filed his answer to a bill to foreclose the mortgage, when he paid it into court.—*Held*, to amount to a good tender, exonerating the mortgagor from liability for interest thereafter; *held*, *also*, that, on a demand for the principal made by the mortgagee's solicitor, after the foreclosure had been brought, the mortgagor's offer to pay him the money as soon as he could obtain it from the bank, which was a few miles distant, was also a valid tender.

Bill to foreclose.   On final hearing on pleadings and proofs.

*Mr. M. Wyckoff*, for complainant.

*Mr. J. L. Connet* and *Mr. J. N. Voorhees*, for defendant Bragg.

THE CHANCELLOR.

The dispute between the parties litigant in this case is mainly as to a tender which the defendant Bragg says he made to the complainant on the 31st day of March, 1882, of the principal, $3,975, then past due on two mortgages (those now in suit), one for $2,700 and the other for $1,275, which the latter held on his property.   On the 29th of March, 1882, he paid the interest due up to April 1st, following.   When he paid that money he expressed his intention to pay the principal and his readiness to do so, but had not all the money in cash.   Part was in the form

NOTE.—A check is not a good tender, *Grussy* v. *Schneider*, *50 How. Pr. 134, 55 Id. 188 ; Prague* v. *Greenlee, 22 Gratt. 724 ; Harding* v. *Commercial Loan Co., 84 Ill. 251 ;* see *Sloan* v. *Petrie, 16 Ill. 262 ;* and cannot, as such, be deposited in court, *Lewis* v. *Larson, 45 Wis. 353 ;* as to a deposit of a deed, *Anderson* v. *Mills, 28 Ark. 175 ;* or land warrant, *Bolster* v. *Post, 57 Iowa 698 ;* or promissory notes, *Mason* v. *Croom, 24 Ga. 211.*

Whether a creditor received a check as payment, is a question for the jury, *Hough* v. *May, 4 Ad. & El. 954.*

Where a note was transferred by the payee to an insurance company, at whose office it had been drawn payable, and the maker had on deposit there almost enough funds to meet it, a tender to the company of his check drawn on his deposit and of the difference in money, was held good as against a holder to whom it had been endorsed after maturity, *Shipp* v. *Stacker, 8 Mo. 145 ;* see *Myers* v. *Byington, 34 Iowa 205 ; Ward* v. *Smith, 7 Wall. 447 ; Balme* v. *Wambaugh, 16 Minn. 116.*

An offer to draw a check is no tender, *Dunham* v. *Jackson, 6 Wend. 22.*

A draft on a banker was held good, *Wilby* v. *Warren, 1 Tidd's Pr. 187, per Buller, J.*   See *Walker* v. *Forbes, 25 Ala. 139.*

of bank checks, which the complainant was not bound to accept. Bragg says that after he had paid the interest and the complainant had refused a proposition to continue the loans at a reduced rate of interest, five per cent., he told the complainant that he would pay him off, but the complainant would not take the money that day, as they (himself and John M. Apgar, who accompanied him) had checks. Apgar says that Bragg said to the complainant that he would pay him off, and that he, Apgar, told the complainant that he had checks in his pocket with which to pay the mortgages off. The complainant says that Bragg said he supposed the complainant would not take checks. They appear then to have left the complainant's house, and on the 31st of March, two days afterwards, returned with James S. Clark, whom they took along merely as a witness. Apgar had agreed to lend Bragg the money to pay off the complainant's mortgages. On the latter occasion the three went together to the complainant's house in the daytime and in the usual hours of business. The complainant had an office in his house. The entrance to it from the front was across a porch and then by a hall-way, from which a door gave admission to it directly. On the other side of the hall was the dining-room of the house, into which admission from the front of the house was gained over the porch by a door on the porch and adjoining the hall-way. They had with them the amount of the principal of the mortgages, $3,975, in

A bank certificate of deposit is not available to redeem land sold on execution, *Dougherty* v. *Hughes, 3 Greene (Iowa) 92;* nor a certified check, *Thorne* v. *San Francisco, 4 Cal. 127.*

City orders are unavailable, *Comstock* v. *Gage, 91 Ill. 329 ; Helena* v. *Turner, 36 Ark. 577;* or county orders, *Perry* v. *Colquitt, 63 Ga. 311; Howell* v. *Hogins, 37 Ark. 110;* as to a state auditor's warrant, *Com.* v. *Rodes, 5 Mon. 318, 320;* or a post-office order, see *Gordon* v. *Strange, 1 Exch. 477.*

A tender of the creditor's own promissory note, then due, is insufficient, *Cary* v. *Bancroft, 14 Pick. 315; Bellows* v. *Smith, 9 N. H. 285; Allen* v. *Hartfield, 76 Ill. 358; Wilmarth* v. *Mountford, 4 Wash. C. C. 79; Barker* v. *Walbridge, 14 Minn. 469;* see *Bell* v. *Ballance, 1 Dev. 391; Foley* v. *Mason, 6 Md. 37; Thorp* v. *Wegeforth, 56 Pa. St. 82; Dehon* v. *Stetson, 9 Metc. 341; Searles* v. *Sadgrave, 5 E. & B. 639; Borden* v. *Sackett, 113 Mass. 214; Williams* v. *Dooly, 53 Ga. 71.*

If a check is received without objection on that ground, it is a valid tender,.

Sharp v. Todd.

gold and legal tender currency, and the object of their visit was to make a tender of the principal to the complainant. Bragg says they were all together, the others as close to him as they could be; that the complainant met him from the inside as he entered the hall door and told them to go into the dining-room, and with that took hold of the door into which Bragg was entering with his right hand, and put his left hand on Bragg's breast and pushed him back; that he, Bragg, then stepped back and saw that the complainant was going to close the door upon him; that he, Bragg, then said, "Let us in; we've got your money; I want those papers," and that the complainant then slammed the door shut and said, "I've nothing to do with you; you have paid your interest." He adds that the complainant then locked the door; that they were out of doors and that they then got into their wagon and took the money back to the bank at Clinton from which they had taken it. Clark testifies that when they went to make the tender he carried the money; that they went on the porch and to the door; that it stood ajar, he thinks; that Bragg stepped up to it and opened it wider; that he does not know whether Bragg was entirely in the hall or not, but that he was partly in; that about that time the complainant got to the door and motioned and said, he thinks, "Go into the other room," and he thinks that about that time Apgar said to Bragg, "Demand your papers;" and then Bragg said, "I have

Jones v. *Arthur*, 8 *Dowl. Pr. 442*; *Becker* v. *Boon*, 61 *N. Y. 317*; *Mitchell* v. *Vermont Co.*, 67 *N. Y. 317*; but the creditor's mere silence has been held not to be a waiver, *Jennings* v. *Mendenhall*, 7 *Ohio St. 257*.

A tender made at the window of a house, the creditor being at the window and not admitting the debtor within the house, is sufficient, *Wing* v. *Davis*, 7 *Me. 31*; and, also, where the creditor orders the debtor away or repulses him, *Sands* v. *Lyon*, 18 *Conn. 18*; *Meserole* v. *Archer*, 3 *Bosw. 376*; *Harris* v. *Mulock*, 9 *How. Pr. 402*; or refuses to remain while the money is counted, *Raines* v. *Jones*, 4 *Humph. 490*; see *Knight* v. *Abbott*, 30 *Vt. 577*.

A tender by the agent of the debtor of the whole sum demanded by the creditor, by pulling out his pocket-book, and offering to pay it, if the creditor would go into a neighboring public-house, is good, *Read* v. *Golding*, 2 *M. & S. 86*.

Objection was made to a tender of plaintiff's check, because not certified, and he withdrew with defendant's consent, and returned in about two hours

got the money to pay off· those mortgages, and I want those
mortgages," that the complainant kept pushing and closed the
door and said, "You have paid your interest; I have nothing to
do with you," and locked the door. He says he heard the bolt
as the door was locked and saw Bragg try the door immediately;
that when Bragg so tried the door it did not open, and that they
stood on the stoop perhaps a minute, and then went away.
Apgar says he does not remember whether Bragg knocked at
the door, or how it was; that the complainant said they must go
into another room, and then wheeled around and said, "I don't
want to see you, you have paid your interest," and then shut the
door; that Bragg said to the complainant that he wanted his
papers—his bonds and mortgages; that he thinks he, Apgar,
told Bragg to demand his papers; that he does not remember
whether Bragg told the complainant he wanted his papers when
he was just going in or while he was out; that he thinks it was
while he was out; that he heard the door locked, and when it
was locked they three were outside of the door and the com-
plainant inside; that they then went away. The complainant
says he saw them at the hall door and requested them to go into
the dining-room. He admits that he locked the door and that
he said to Bragg that he had paid up his interest and he had no
further business with him.

William H. Johnson, a lawyer, testifies that about the middle

with it certified.—*Held*, that defendant's objection that the hour for performing
the contract had passed, could not prevail, *Duffy* v. *O'Donovan, 46 N. Y. 223.*

An offer to procure the money in five minutes, is not a valid tender, *Breed*
v. *Hurd, 6 Pick. 356;* nor where the debtor had not the money in his pocket,
but had it in his house, at the door of which the parties were standing, *Kraus*
v. *Arnold, 7 Moore 59;* an offer to go up stairs and fetch the amount was held
good, *Harding* v. *Davies, 2 C. & P. 77;* but not "if a man said, I have got the
money and will go a mile to fetch it," *Ibid., per Best, C. J.;* see *Farnsworth* v.
*Howard, 1 Coldw. 215;* or "get it the next morning," *Blair* v. *Hamilton, 48
Ind. 32;* nor where the debtor, saying he would pay so much, put his hand
into his pocket to take out the money, but the creditor left the room before he
could produce it, *Leatherdale* v. *Sweepstone, 3 C. & P. 342;* see *Bakeman* v.
*Pooler, 15 Wend. 637; Thorne* v. *Mosher, 5 C. E. Gr. 257.*

If a creditor designedly absents himself from home, for the fraudulent pur-
pose of avoiding a tender, he cannot object that no tender was made, *Southworth*

Sharp *v.* Todd.

or latter part of April, 1882, the complainant told him that Bragg and Apgar had been there talking about paying him off; that he would not accept the money because Bragg had given him no notice of his intention to pay it, and added that anyway he, Bragg, might as well borrow the money of him as of any one else. He also says · the complainant said he had not demanded that they show him the money, because he thought he was not compelled to take it, as they had not given him three months' notice. There does not appear to have been any provision or agreement that he should have any notice. In that conversation the witness told him that the money that was due on the mortgages was in the Clinton bank, and that he could have it whenever he would surrender the bonds and mortgages.

The effect of a tender, when lawfully made, is to discharge the debtor from subsequent interest. But to have this effect the amount tendered must be kept in readiness, and on bill to redeem or on plea or answer setting up the tender, the money must be paid into court. *Shields* v. *Lozear, 7 C. E. Gr. 447.* Where an offer is made to pay, the person offering having at hand at the time the money to make a lawful tender, and the creditor refuses to receive the money, it is a good tender. *Add. on Cont.* § *356.*

It is clear, from the testimony, that the complainant, who is a man of business, knew that the object of the visit of Bragg to him on the 31st of March was to pay off the mortgages, and

---

v. *Smith, 7 Cush. 391; Judd* v. *Ensign, 6 Barb. 258; Kling* v. *Childs, 30 Minn. 366;* and so where the creditor is absent, though without such design, *Smith* v. *Smith, 25 Wend. 405, 2 Hill 351; Howard* v. *Holbrook, 9 Bosw. 237; Tasker* v. *Bartlett, 5 Cush. 359; Houbie* v. *Volkening, 49 How. Pr. 169;* see *Holmes* v. *Holmes, 12 Barb. 137, 9 N. Y. 525; Watson* v. *Sawyers, 54 Miss. 64; Gill* v. *Bradley, 21 Minn. 15; Thomas* v. *Mathis, 92 Ind. 560; Trimble* v. *Williamson, 49 Ala. 525; Egbert* v. *Chew, 2 Gr. (N. J.) 446; Barton* v. *McKelway, 2 Zab. 165;* or refuses to receive the money himself and to give the name of the party to whom he claims to have assigned the obligation, *Fritz* v. *Simpson, 7 Stew. Eq. 436; Noyes* v. *Clark, 7 Paige 179; Strafford* v. *Welch, 59 N. H. 46.*

If a creditor, who has purposely avoided a tender, brings his action so soon thereafter that a tender could not be made, this will excuse the debtor, *Gilmore* v. *Holt, 4 Pick. 257; Schroeder* v. *Laubenheimer, 50 Wis. 480; Fish* v. *Williams, 75 Me. 217;* see *Woodruff* v. *Depue, 1 McCart. 168; Whelan* v. *Reilly, 61 Mo. 565.*—Rep.

that Bragg had the money there for the purpose, and it is also evident that to avoid the tender he thrust Bragg out of the house, saying that he did not want to see him; that Bragg had paid his interest, and he had nothing further to do with him. Under the circumstances, the transaction was a lawful tender and a refusal. It is urged on behalf of the complainant that he did not intend to prevent a tender, but merely, as he had a right to do, chose to see Bragg in another part of the house than the hall or office, or wanted Bragg to wait in the dining-room until he should be at liberty to see him, the complainant being then engaged with some one else in his office. But there is not only no evidence that he was willing to see Bragg, but clear proof that he was unwilling to do so, and that he was desirous of avoiding the making of the tender. He said he did not want to see him, and that since Bragg had paid his interest he had no further business with him.

The money was, immediately after the tender, deposited by Bragg and Apgar in the bank from which it had been taken, there to remain, so that the complainant might have it on delivering up the bonds and mortgages, and it remained there as such deposit, drawing no interest, up to the time when it was withdrawn in order that it might be paid into court. It was, indeed, deposited to the credit of Apgar, but the cashier would, in pursuance of his instructions on the subject, have paid it over to the complainant on application by him and the surrender of the bonds and mortgages. It appears to have remained there until October 8th, 1883, when it was withdrawn, and the next day, on the filing of the answer in this cause, was paid into this court. As before stated, Johnson swears that he told the complainant, about the middle or latter part of April, 1882, that the money was in the Clinton bank, and that he could have it whenever he would surrender the bonds and mortgages. In a letter written by Johnson to the complainant, dated December 12th, 1882, he said that the money was deposited in the bank, and that it was ready for him at any time. It matters not, however, in whose name the money was deposited. Bragg was only bound to have it ready to pay over to the complainant on demand, or within a

reasonable time thereafter. After this suit was in fact begun, application was made to him by the complainant's solicitor for the payment of the money due, according to the complainant's claim, upon the bonds and mortgages. It seems doubtful whether this was intended as a demand made in view of the tender; for the complainant then denied, as he still does, that there ever was any such attempt to make the tender as affected his claim to interest on the mortgages. Moreover, the solicitor, according to his testimony, demanded no specified sum. He merely said he had come for the money on the mortgages. Bragg says he demanded a sum somewhat over $4,300 for the principal and interest up to that time. But assuming that it is to be regarded as a demand of the principal money, Bragg's offer to get the money as soon as he could go to Apgar and get a check for it, and then to the bank to draw the money, was a sufficient compliance with it. He offered, if the solicitor would wait, to go to Apgar's at once and get the check, and then go to the bank for the money. Apgar lived about two miles and a half distant, and the bank was between six and seven miles from Apgar's and also from Bragg's house. On a demand under such circumstances the party on whom the demand is made is entitled to a reasonable time in which to get the money. *Gibbs* v. *Stead,* *8 B. & C. 528.* The solicitor refused to wait. The complainant is not entitled to interest, and must pay costs to Bragg.